# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

|                                  |     |                          |
|----------------------------------|-----|--------------------------|
| **ROBIN M. WIER,**               | )   |                          |
|                                  | )   |                          |
| **Plaintiff,**                   | )   |                          |
|                                  | )   |                          |
| **vs.**                          | )   | **Case No. CIV-07-1311-HE** |
|                                  | )   |                          |
| **MICHAEL J. ASTRUE,**           | )   |                          |
| **Commissioner of Social**       | )   |                          |
| **Security Administration,**     | )   |                          |
|                                  | )   |                          |
| **Defendant.**                   | )   |                          |

## REPORT AND RECOMMENDATION

Robin M. Wier ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing her application seeking supplemental security income payments in March, 2004 [Tr. 41 - 44]. When asked to state the "illnesses, injuries or conditions that limit her ability to work[,] Plaintiff answered: "degenerative disc disease." [Tr. 49]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 22 - 24 and 26 - 28]; on request for reconsideration, Plaintiff's additional claims of headaches and

muscle spasms were addressed [Tr. 26]. At Plaintiff's request an Administrative Law Judge ("ALJ") conducted a February, 2006 hearing where Plaintiff, who was represented by counsel, testified [Tr. 29 and 174 - 203]. In his February, 2007 decision the ALJ found that while Plaintiff was unable to perform her past relevant work,[1] application of certain Social Security Administration regulations and rules directed the conclusion that Plaintiff was not disabled within the meaning of the Social Security Act [Tr. 13 - 17]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on

---

[1]According to the ALJ's decision, Plaintiff has no past relevant work experience [Tr. 13, 15].

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## Plaintiff's Claims of Error

In the first of three claims of error, Plaintiff maintains that the ALJ erred as a matter of law by failing to discuss certain probative evidence which conflicted with his findings. Next, Plaintiff claims additional legal error through the ALJ's failure to properly evaluate Plaintiff's mental impairments and finally, contends that the ALJ's residual functional

capacity ("RFC")[2] assessment and conclusive reliance upon the Medical-Vocational Guidelines were not supported by substantial evidence.

**Analysis**

The ALJ determined, "based on the credible evidence of record[,]" that Plaintiff – who was thirty-five at the time of the decision with a ninth grade education and no past relevant work experience[3] – was severely impaired by a history of spinal fusion, hypothyroidism, chronic pelvic pain, hypertension, and a history of a hysterectomy [Tr. 13]. Plaintiff testified that she lived in a home with her three children – ages 10, 12, and 15 – and with her husband who manages a local Subway restaurant [Tr. 182 - 183].

The ALJ began his review of the medical evidence of record by noting that Plaintiff was admitted to the hospital in October, 2003 with complaints of chronic pelvic pain; her intake information showed that she had previously undergone a spinal fusion with four rods in her lower back in 2001 [Tr. 13]. Following a hysterectomy, she was discharged in good condition by her treating physician, Michael Sullivan, M.D., with diagnoses of chronic pelvic pain over many years, cervicitis, ovarian follicular cysts, hypothyroidism, hypertension, chronic sinus tachycardia, and anxiety [Tr. 13 and 81].

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 416.945 (a) (1).

[3]Plaintiff testified that she worked as a security guard for Pinkerton's from October, 1991 until February, 1992 and did some babysitting in her home in 1994 [Tr. 181 - 182].

After filing her claim for supplemental security income payments several months after her hysterectomy, Plaintiff was examined by a consultative physician, William P. Becker, D.O., in June, 2004 [Tr. 13 - 14 and 86 - 88]. Plaintiff's chief complaint was of low back pain "100 % of each day." *Id.* at 13 - 14 and 86. Plaintiff advised Dr. Becker that her pain – which was made worse by sitting or standing – was currently at 7 on a 10 point scale, that the pain radiates into both hips, and that she also had muscle spasms in her lower back. *Id.* at 14 and 86. Plaintiff informed Dr. Becker that her back pain limited her activities and that she was unable to stand for more than 15 - 30 minutes or sit more than 15 - 30 minutes or lift over 15 pounds; she routinely drove a car, worked around her house – inside but not out – and cared for her personal needs. *Id.* Plaintiff also complained of daily headaches of varying intensity with no associated symptoms such as nausea, dizziness, numbness, or tingling. *Id.* at 14 and 87.

On physical examination Dr. Becker first observed that Plaintiff ambulated into the office and around the room and was on and off the examination table "with no evidence of any objective pain or discomfort." *Id.* No evidence of heart disease was detected. *Id.* Examination of Plaintiff's neck and upper thoracic area revealed no tenderness or muscle spasm. *Id.* Plaintiff's back had no gross deformities but she did have generalized tenderness to the lumbrosacral region on both sides. *Id.* There were no acute trigger points, no tenderness over the bony prominence, and no pain over either sciatic notch. *Id.* Straight leg raising was negative in the sitting position, there were no neurological, sensory, or motor

deficits, and Plaintiff was able to heel walk and toe walk on both sides with no weakness. *Id.*

The ALJ's decision also documents his review of the progress notes and laboratory findings of Plaintiff's treating physician, Dr. Michael Sullivan [Tr. 14]. The ALJ concluded that, "These notes show the claimant is being maintained on medical[4] therapy for her complaints. These notes fail to document any functional loss that would be inconsistent with the findings of any Social Security consulting physician." *Id.* With respect to the findings of Social Security non-examining consulting physicians,[5] the ALJ relied[6] on the functional assessment made by Penny Aber, M.D., as confirmed by Thurma Fiegel, M.D. [Tr. 14 and

---

[4]The undersigned concurs with Plaintiff that while the ALJ stated that Dr. Sullivan maintained Plaintiff on *medical* therapy, he was actually noting that "she was maintained on *medications* for her complaints." [Doc. No. 14, p. 12 (emphasis added)].

[5]With regard to the opinions of State agency physicians, Social Security regulations provide that

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

20 C.F.R. §416.927(f)(2)(i)(emphasis added).

[6]Plaintiff does not maintain on appeal that Dr. Sullivan, the treating physician, provided any opinion evidence. Thus, the "treating physician rule" is not applicable here. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources.")).

91 - 98]: Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; she can stand and she can sit with normal breaks for about 6 hours in an 8 hour work day; she should avoid more than occasional stooping but has no other postural limitations; and, she has no manipulative, visual, communicative, or environmental limitations. *Id.* The ALJ specifically noted Dr. Aber's statement that Plaintiff had reduced range of motion in the lumbar region as well as the doctor's conclusion that Plaintiff's functional capacity is not otherwise restricted by pain [Tr. 14 and 93].

With respect to the credibility of Plaintiff's claim that she suffers from disabling pain and discomfort, the ALJ made the following determination:

> [Plaintiff] alleges daily severe headaches however, Dr. Becker found "no associated symptoms such as nausea, dizziness, numbness or tingling". . . . She complains of constant pain which prevents her from sitting or standing for more than 15 to 30 minutes.  Dr. Becker however observed her "get on and off the examination table with no evidence of any objective pain or discomfort" . . . .  Examination did not reveal any spasm or tenderness in the cervical or thoracic spine.  Dr. Aber states that the claimant has some decreased range of motion in the lumbar region, but she is not otherwise restricted by pain.  She has no grip strength loss.  Straight leg raising is negative.  There is no redness or tenderness of joints.  She can heel and toe walk without weakness.  There is simply no objective evidence of the pain and limitations which the claimant alleges.  She has no sensory or motor deficits.  She has no heart problems or breathing difficulty.  The evidence does not indicate that claimant suffers from the side effects of medication resulting in an inability to work.  There is no indication that her daily activities are curtailed to an extent that would suggest an inability to engage in all work activity.  She no doubt experiences some pain and discomfort, however the Administrative Law Judge is simply not persuaded that it rises to a level of severity, and is of such duration, and intensity so as to preclude her from engaging in all substantial gainful employment.

[Tr. 14 - 15 (record references omitted)].

After concluding that Plaintiff's assertions concerning her ability to work were not credible and that Plaintiff had the capacity to perform a full range of light exertional work activity, the ALJ applied Rules 202.18 and 202.19 in Table No. 2 of the Medical-Vocational Guidelines[7] – the so-called "grids" – and determined that Plaintiff was not disabled. *Id.*

**<u>The ALJ's Discussion of the Evidence</u>**

The foregoing review of the ALJ's decision reveals that the ALJ relied upon the medical source opinions and findings of the Social Security consultants – both examining and non-examining – in assessing the credibility of Plaintiff's claim of disabling limitations and in formulating her RFC for a full range of light work. Plaintiff asserts no claim of error in this regard in this appeal. Instead, it is Plaintiff's initial argument that the ALJ's failure to discuss the specifics of the treatment records of Dr. Michael Sullivan constitutes legal error. Plaintiff maintains that these records document severe back pain, migraine headaches, tachycardia, and mental impairments. Plaintiff relies on case law from the Tenth Circuit holding that although an ALJ is not obligated to discuss every piece of evidence of record, he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). Plaintiff further maintains that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004).

---

[7]*See* 20 C.F.R. § 416.969; Part 404, Subpart P, Appendix 2.

**Headaches**

As to her headaches, Plaintiff argues that even though she advised Dr. Becker - the examining consultative physician – that her headaches were mild to moderate and did not cause her to experience symptoms such as nausea, dizziness, numbness, or tingling, Dr. Sullivan's records demonstrate that Plaintiff "has had significant problems with headaches which were repeatedly diagnosed as migraines and which she testified were worsening and accompanied by associated symptoms of sensitivity to light and sound such that she had to avoid her children." [Doc. No. 14, p. 13].  According to Plaintiff, not only was such evidence significantly probative but it contradicted the ALJ's finding that Plaintiff's headaches did not constitute a severe impairment.  *Id.*

Plaintiff testified at her February, 2006 hearing that in the two years since March, 2004 – the month of her application for Social Security benefits – she had experienced a migraine headache at least once each month [Tr. 188].  She described the migraines as "completely debilitating," stating that she became very sensitive to light, saw spots, and required isolation [Tr. 188 - 189].  She stated that the migraines lasted anywhere from four to five hours to two or three days [Tr. 188].  Not only is this testimony contrary to her statements to Dr. Becker in June, 2004 when she described her headaches as being mild to moderate and frontal in nature [Tr. 87], but it is not borne out by Dr. Sullivan's records, the records which Plaintiff maintains are probative of the severity of her headaches.

According to Plaintiff's own statement of her medical history [Doc. No. 14, p. 2 - 8], Dr. Sullivan's records reflect a reference by Plaintiff in April, 2002 to her headaches being

"the same." [Tr. 127].  Also reflected are her complaint of increased frequency of headaches in July, 2002 [Tr. 126] and a "bad headache" in October, 2002 [Tr. 122].

Headaches were not mentioned again until January, 2004 when Plaintiff reported a migraine that month as well as one in August [Tr. 109].  Medications were refilled in February and March, 2004 for back pain and headaches [Tr. 107 and 109]. Six months later in September, 2004, Plaintiff complained of a frontal headache that lasted four days [Tr. 104].  While Dr. Sullivan stated that he did not find the headache to be at migraine level, he nonetheless gave Plaintiff a sample of Imitrex.[8]  *Id.*  In November, 2004, Plaintiff reported that the Imitrex had been "helpful but not curative." [Tr. 103].  Dr. Sullivan diagnosed Plaintiff with migraine headaches and gave her a sample of Maxhalt.[9] *Id.*

Headaches were not referenced in the record again until May, 2005, when Plaintiff reported she was "having a lot of headaches." [Tr. 147].  By June, 2005, however, while Plaintiff continued to advise of having headaches "off and on,"she stated that they were not as intense.  *Id.*  Thereafter, there was no reference to headaches, migraines, or any specific migraine medication until December, 2005, when Plaintiff reported that "except for back doing okay." [Tr. 144].  Dr. Sullivan listed migraine headaches as one of Plaintiff's diagnoses.  *Id.*

---

[8]Plaintiff describes Imitrex as a "migraine headache medication." [Doc. No. 14, p. 6].

[9]Plaintiff describes Maxhalt as "another migraine medication." [Doc. No. 14, p. 6].

The next reference to headaches/migraines is in May, 2006 when Plaintiff reported that she "had a bad migraine recently." [Tr. 141].  There was another reference to migraine headaches in August, 2006 [Tr. 137] and to a headache in October, 2006 [Tr. 135].  There was no further mention of headaches, migraines, or to specific migraine medication in Dr. Sullivan's records which end on January 19, 2007 [Tr. 133 - 134].

Under the law of the Tenth Circuit, while the ALJ has the legal duty to "discuss the evidence and give reasons for his decision[,]" *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004), "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Id.*  Here, the ALJ acknowledged that Plaintiff suffered from headaches but concluded that the headaches were not of the severity described by Plaintiff due to her lack of symptoms as reported to Dr. Becker.  While Plaintiff claims that her headaches have continued to increase in severity and frequency, Plaintiff's testimony that she suffered from at least monthly, debilitating headaches is not supported by Dr. Sullivan's records.  Instead, these records reflect far fewer headaches/migraines and fail to suggest resulting functional limitations.  Here, as in *Howard,* a specific discussion of Dr. Sullivan's records pertaining to Plaintiff's headaches was not required because "none of the record medical evidence conflicts with the ALJ's conclusion

that claimant can perform light work."[10] *Id.*  No legal error was committed by the ALJ in this regard.

**Back Pain**

Next, Plaintiff contends that "Dr. Sullivan's records also reasonably showed that [Plaintiff's] back pain and corresponding lower extremity symptoms were significant enough to prevent her from performing the six hours of daily standing and/or walking required by 'light' work." [Doc. No. 14, pp. 13 - 14].  As previously discussed, the ALJ based his RFC for light work on the medical source opinions by the Social Security non-examining physicians and upon the examination report by Dr. Becker who reported no objective medical findings to support Plaintiff's claim of *disabling* functional limitations.  Plaintiff does not contend on appeal that the ALJ's findings with regard to Plaintiff's alleged back limitations lack evidentiary support in the record but, instead, she again focuses only on evidence which she maintains the ALJ was legally required to address in his decision, concluding that "the evidence shows that her back pain failed to improve with complaints of the same at least over twenty occasions from 2002 through 2006 due to degenerative disk disease requiring repeated prescriptions of multiple narcotic pain medications." [Doc. No. 14, p. 14].

The record citations provided by Plaintiff in support of her argument establish only what is undisputed in this case: Plaintiff suffers from chronic lower back pain, and Dr.

---

[10]The ALJ's finding here was that, "These notes fail to document any functional loss that would be inconsistent with the findings of any Social Security consulting physician." [Tr. 14].

Sullivan is treating her for these complaints.   While Plaintiff argues that the records "reasonably showed that [Plaintiff's] back pain and corresponding lower extremity symptoms were significant enough to prevent her from performing the six hours of daily standing and/or walking required by 'light' work[,]" [Doc. No. 14, pp. 13 - 14], this is Plaintiff's interpretation and not that of Dr. Sullivan or any other medical source.   Plaintiff has failed to point to any evidence in Dr. Sullivan's records which establishes a functional restriction that is inconsistent with the RFC assessed by the Social Security medical sources.   The Social Security physicians – and, in turn, the ALJ – found that Plaintiff had a spinal fusion and suffered from lumbar tenderness and a reduced range of motion in her lumbar region and, as a consequence,  restricted her to light work only.   Nothing in Dr. Sullivan's records – which contain many more subjective reports by Plaintiff[11] than objective findings by Dr. Sullivan – conflicts with that determination and, accordingly, a more specific analysis of that evidence was not legally required.   *Howard,* 947 F.3d at 947.

Plaintiff also argues that the ALJ's decision is legally flawed because he did not specifically mention Dr. Becker's findings that Plaintiff had a reduced range of motion in her cervical spine or make specific reference to the degree of reduction in her lumbar range of motion [Doc. No. 14, p. 14].   Plaintiff's reduced lumbar range of motion – which is

---

[11]The ALJ found that Plaintiff's "allegations of disabling pain and discomfort are not supported by credible facts and findings from which it can be concluded that she has an impairment or impairments which could reasonably be expected to cause the degree of pain and discomfort which she alleges." [Tr. 14].  Plaintiff does not contend on appeal that the ALJ's credibility assessment is unsupported by substantial evidence.

significant to Plaintiff's low back pain[12] – was specifically noted by the ALJ in his discussion

of Dr. Aber's findings [Tr. 14], and Plaintiff has failed to demonstrate how the specific

degree of reduction would conflict with her RFC for light work.

### Claimed Mental Impairments

The issues surrounding lack of specific reference to Plaintiff's claimed mental

impairments will be addressed in conjunction with her argument that the ALJ committed

legal error by failing to properly evaluate Plaintiff's claimed mental impairments.

### Tachycardia

As with the foregoing claims, Plaintiff has not established that the ALJ committed

legal error by failing to specifically analyze each of Dr. Sullivan's references to a high pulse

rate [Doc. No. 14, p. 15].  Once again, there is no indication from Dr. Sullivan or any other

medical source that a high pulse rate restricts Plaintiff's ability to perform a full range of

light work.

### Credibility

Although Plaintiff does not maintain that the ALJ's credibility assessment is

unsupported by substantial evidence or is otherwise legally flawed, she contends that "the

ALJ erred by failing to discuss [Plaintiff's] testimony which supported her credibility under

the relevant factors." [Doc. No. 14, p. 15].   Plaintiff maintains that "[i]n short, the ALJ's

---

[12]Plaintiff fails to explain how a reduced range of motion in her cervical spine pertains to her complaints.  In any event, the ALJ specifically noted Dr. Becker's findings that Plaintiff's cervical spine had no muscle spasm and was not tender to palpation [Tr. 14].

decision failed to reflect that [Plaintiff's] daily activities were minimal and not inconsistent with her allegations of disabling pain." *Id.* at 16.

The ALJ did not specifically address each of the Plaintiff's claimed limitations in her day to day life: only driving when she had to, occasionally needing help to put on her shoes, difficulty with light household activities, spending much of her day lying down, limited social interaction, inability to work out, difficulty with attending her children's activities. *Id.* at 14. Instead, he noted her all-encompassing claim "of constant pain which prevents her from sitting or standing for more than 15 to 30 minutes[,]" [Tr. 14 - 15], and proceeded to explain why the evidence of record did not support this claim and, thus, did not support the credibility of her assertions. *Id.* He specifically considered her daily activities, acknowledged that she suffered from pain and discomfort, but concluded that while her activities were curtailed, the curtailment was not so extreme that she was unable to do *any* work activity [Tr. 15]. He specifically considered Plaintiff's use of medication along with her claim that the medications caused side effects which prevented her from working, finding that the evidence did not establish this claim. *Id.* The undersigned's review of the evidence is consistent with that of the ALJ's. Although Plaintiff testified that her medications made her drowsy [Tr. 185],[13] there is no evidence in Dr. Sullivan's records of any report by Plaintiff in this regard, and Plaintiff's own statements in Social Security filings are  not

---

[13]Plaintiff did not specify what medication or medications made her drowsy and the question put to her did not differentiate between "the Zoloft of [sic] the Lortab or whatever . . . ." [Tr. 185].

consistent. *See* Tr. 59 where Plaintiff reported on May 24, 2004, that her medications did not cause side effects and her statement at Tr. 77 when she stated on February 1, 2005, that one of these same medications did cause drowsiness.

Next, citing Social Security Ruling 96-7p which addresses credibility assessments, Plaintiff correctly argues that the ruling provides that when "evaluating the credibility of an individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who previously interviewed the individual." SSR 96-7p, 1996 WL 374186, at * 8. While the ALJ stated that he had made his decision after careful consideration of the entire record [Tr. 16], Plaintiff is once again correct in arguing that the ALJ did not specifically discuss the following observations made by an SSA interviewer on the same day[14] Plaintiff filed her application: Plaintiff had difficulty with sitting, standing, and walking [Tr. 56]; "Claimant walked slowly and sat slowly. Seemed to be in great pain." [Tr. 57].

Plaintiff maintains that "the ALJ should have discussed this evidence as it reasonably showed greater functional loss than as found by the state agency physicians." [Doc. No 14, p. 14]. The undersigned disagrees. Although by ruling the ALJ should have discussed the comments by the interviewer, in light of the physical findings and observations by an examining physician it is not reasonable to conclude that such lay comments would have persuaded the ALJ – or any other adjudicator – that Plaintiff could not perform light work.

---

[14]Plaintiff states that this interview was conducted in August, 2005 [Doc. No. 14, p. 14]. Instead, the report appears to have been prepared by M. Edmondson on 3/16/2004. [Tr. 57].

The ALJ committed no legal error in connection with his discussion of the evidence of record.  None of the evidence that the ALJ specifically failed to address conflicted with his determination that Plaintiff could perform light work.  *See Howard,* 379 F.3d at 947.

### Plaintiff's Claimed Mental Impairments

Plaintiff maintains that "[w]hen there is evidence of a mental impairment which allegedly limits a claimant's ability to work, the ALJ must follow a special technique set forth in the regulations to analyze that mental impairment." [Doc. No. 14, p. 17].  Plaintiff acknowledges that the ALJ did not follow the technique because he determined that the record did not establish the presence of a mental impairment.  *Id.* at 18.  Plaintiff contends, however, that the ALJ's finding was incorrect "because not only did Dr. Sullivan note that [Plaintiff] was on Zoloft for depression (consistent with her testimony) in October 2003 (R. at 113, 196), but the record contains multiple diagnoses of anxiety and/or panic attacks in 2003, 2006, and 2007. (R. at 81, 120, 133 - 135)." *Id.* Thus, according to Plaintiff, the ALJ was required to follow the technique[15] and his failure to do so constituted legal error.  *Id.*

The undersigned's review of the record shows that Plaintiff made no claim in her initial filings with the Social Security Administration that she was disabled as a result of a mental impairment.  The first reference to a claimed mental difficulty was in a supplemental disability report dated February 1, 2005, where Plaintiff stated that, "I am more depressed because I can't contribute to the household like I should." [Tr. 74 and 79 - 80].  At her

---

[15]*See* 20 C.F.R. § 416.920a.

administrative hearing, Plaintiff's only references to any mental difficulty were in the following exchanges between Plaintiff and her attorney:

Q.    And you have also received some treatment or, or some medication for depression?

A.    Yes.

Q.    In terms of medication, do you know what medications you're taking at the present time?

A.    For pain I am taking Lortab 10s, Darvocet-N 100s, and Soma.

Q.    What about for the depression?

A.    I have been on Zoloft.

Q.    How long have you been on the Zoloft, do you know?  Just in general.

A.    About a year and a half, maybe two.

[Tr. 184 - 185].

Q.    You're taking Elavil for the depression.  Tell, tell me about that.  How, how do you feel day to day emotionally?

A.    Emotionally, it's become almost as bad as the pain.

Q.    What's that mean to you?

A.    To me, I've become more of a burden on my family than anything, because I'm not able to do with my kids what I see other parents doing. I'm not able to do what I'd like to do.  I'm not able to contribute to my

>        family money-wise.  We're going from pay check to pay check, and a
>        lot of it is due to my health problems, and I feel completely useless.
>
> Q.     Are some days better than others?
>
> A.     As far as that goes, no.
>
> Q.     Are some days what, what you would call bad days, especially bad
>        days?
>
> A.     Yes.
>
> Q.     How often do you think those happen to you?
>
> A.     Maybe two or three days - - most - - three or four days out of the week,
>        especially the emotional.  I mean it's just - - it's there constantly.

[Tr. 196].

In support of her claim that she successfully established the presence of a mental impairment, Plaintiff cites to specific evidence from the medical record, [Doc. No. 14, p. 18], evidence which is also referenced in the summary of her medical background.  *Id.* at 2 - 8. There, Plaintiff notes the January 31, 2003, diagnosis by Dr. Sullivan of "anxiety" for which she was prescribed Zoloft [Tr. 120].  At her next visit in March, 2003, there was no further diagnosis of anxiety and Zoloft was discontinued.  *Id.*  In June, 2003, there is a notation to resume Zoloft without reference to a diagnosis [Tr. 118].  On October 2, 2003, Plaintiff requested a refill of her "depression med," advising Dr. Sullivan that "stress level high because son suspended from school 2 wks." [Tr. 113]; Zoloft was prescribed.  *Id.*

Plaintiff provides no further citation to her use of Zoloft – or to a prescription therefor – in either her medical background summary, *id.* at 2 - 8, or in her arguments. *Id.* at 15 and 18 - 19.  Neither has the undersigned's careful review of the records disclosed further reference.  Moreover, the undersigned's review further establishes that Plaintiff's October, 2003 request for "depression med," [Tr. 113], is the only time the word depression is used in Dr. Sullivan's treatment records.

As previously noted, when Dr. Sullivan discharged Plaintiff from the hospital following her hysterectomy later in October, 2003, "anxiety" was included as one of her diagnoses [Tr. 81].  Nonetheless, Plaintiff's brief – and the record – contain no mention of depression, Zoloft, or anxiety for the last two months of 2003, for all of 2004, for all of 2005,[16] and for the first ten months of 2006.  On October 26, 2006, Dr. Sullivan diagnosed "panic attack" after Plaintiff reported that she had gone out to eat and experienced shaking of the hands; Inderal – a beta-blocker – was prescribed [Tr. 135]. This diagnosis was repeated on November 13, 2006.  *Id.*  Dr. Sullivan found on November 29, 2006, that the Inderal had been ineffective for the "shakes" – which he said sounded like panic attacks – and Xanax was prescribed [Tr. 134].  A diagnosis of panic attacks was made at Plaintiff's December 15, 2006, appointment, *id.,* no reference was made on January 4, 2007, *id.,* and on January 19,

---

[16]This is inconsistent with Plaintiff's statement to the Social Security Administration on February 1, 2005, that she had recently had an appointment where her "depression [and] nerves" were discussed [Tr. 76].

2007 – the last medical record in evidence – anxiety was diagnosed and Plaintiff was reported to be feeling better [Tr. 133].

The foregoing demonstrates that over Plaintiff's five year treatment history, Dr. Sullivan's record references to depression, anxiety, and panic attacks were both infrequent and sporadic.  There was no record of referral to a mental health professional, of testing, or of treatment apart from the occasional prescription of Zoloft and Xanax.[17] Likewise, the record fails to support Plaintiff's claim that she was prescribed Zoloft on any extended basis.  Finally, Dr. Sullivan makes no suggestion in these records that Plaintiff was functionally restricted by the conditions which he diagnosed and treated with medication.

Once the ALJ concluded that "[t]he record does not show that [Plaintiff] suffers from a mental impairment[,]" [Tr. 15] – a conclusion which  Plaintiff has failed to establish lacks evidentiary support – there was no reason for him to proceed with the special technique. *See* 20 C.F.R. § 416.920a (b) (*If* we determine that you have a medically determinable mental impairment . . . we must document our findings in accordance with paragraph (e) of this section." (emphasis added).  There was "no functional limitation arising from the impairment(s)" for him to rate because he found there was no mental impairment. *Id.* at (b)(2).  Because no mental impairment was found, the ALJ committed no legal error in not completing the technique.

**Medical-Vocational Guidelines**

---

[17]There is no mention of Elavil in Dr. Sullivan's records [ Tr. 196].

Turning to Plaintiff's argument that the ALJ's RFC assessment and his conclusive reliance on the Medical-Vocational Guidelines or "grids," it is well-established that "an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level". *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)   Plaintiff's specific argument is "that the ALJ should not have conclusively relied on the Grids because the evidence convincingly showed that she suffered from significant nonexertional limitation due to her migraine headaches and mental impairments." [Doc. No. 16, p. 7].   Thus, she maintains that the ALJ's RFC findings and reliance on the grids are not supported by substantial evidence.

The undersigned has thoroughly discussed the evidence which supports the ALJ's findings in connection with Plaintiff's headaches and claimed mental impairments and will not repeat it here.   The ALJ determined that Plaintiff's own testimony as to her limitations was lacking in credibility, and no medical source has suggested that Plaintiff is restricted by, as she suggests [Doc. No. 14, pp. 22 - 23], the need for extra breaks, the need to avoid noisy environments, depression, anxiety, panic attacks, inability to pay attention, drowsiness, social difficulties or inability to concentrate.   Substantial evidence supports the ALJ's conclusive reliance on the grids.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed.  The parties are advised of their right to object to this Report and Recommendation by November 3, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 14th day of October, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE